IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>  Respondent,<br><br>vs.<br><br>GEORGE HENDERSON, Jr.,<br>  Movant,<br><br>_____/ | No. CR S-99-0294-GEB-CMK<br>CIV S-03-1819-GEB-CMK-P<br><br>**FILED**<br><br>FEB 21 2006<br><br>CLERK, U.S. DISTRICT COURT<br>EASTERN DISTRICT OF CALIFORNIA<br>BY _____<br>    DEPUTY CLERK |
| UNITED STATES OF AMERICA,<br>  Respondent,<br><br>vs.<br><br>DOROTHY R. HENDERSON,<br>  Movant.<br><br>_____/ | No. CR S-99-0294-GEB-CMK<br>CIV S-03-1819-GEB-CMK-P<br><br>DEFENDANTS' RESPONSE TO MAGISTRATE'S<br>FINDINGS AND RECOMMENDATIONS |

Comes now the Defendants, George Henderson and Dorothy R. Henderson and would respectfully show the Court that the Magistrate's Opinion in this matter should be overruled for the following reasons:

I.   Defendants are actually innocent of the conspiracy to defraud the United States and of aiding and abetting in the filing of a false tax return.

   A.   18 USCS § 4001 (a) provides as follows: "No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." In order to show that the government was "defrauded" it must show that it received less than it was legally entitled to receive. The government is entitled to receive what the law provides, no less, but ALSO NO MORE.

   In this situation what does the law provide the government is to receive:

1. 26 USC § 641 et seq. imposes taxes upon a trust;

2. 26 USC § 671 et seq. set forth when the grantor rather than the trust (or under 26 USC § 661 et seq. the distributee) is taxable. The trust documents and the actual trust administration strictly, scrupulously and meticulously complied with these "safe harbor" provisions. The IRS was not, BY LAW, entitled to collect tax on the trust income from the grantor.

3. 26 USC § 651 provides that if the trust distributes its income annually, it reports the income as a deduction and advises the IRS of the distributee. Again, the trust completely complied with this. Again, the IRS was not, AS A MATTER OF ITS OWN REGULATIONS, entitled to demand that the trust report the income to the grantor, or any other party rather than its distributee.

B. The proof clearly showed that under existing law (statutory as well as IRS regulations and case law), the returns were prepared in compliance with the law and were not false.

C. It is long settled law that tax planning to reduce one's tax liability legally is not fraud or tax evasion and therefore does not constitute defrauding the United States government. At its strongest, the government's case showed only that the trust may have been used, in complete compliance with IRS regulations, THEREFORE LEGALLY, to reduce tax liability. That is not a crime.

Under 18 USC § 4001 absent some statute which they violated, Defendants cannot be imprisoned - sec. 1B. The IRS has very simply tried to create a crime where none existed. Absent some statute (or regulation created pursuant to statute), the IRS had NO right to insist upon taxing the grantors of the trust in contravention of 26 USC §§ 641 and 671 et seq. Nor did the IRS have the right to demand that the trusts violate 26 USC § 651 by reporting the income not to the distributee but to the grantors.

D. This also is a direct violation of Defendants' rights against <u>ex post facto</u> criminalization. Defendants created and administered the trusts strictly in compliance and reliance on the tax code as written. See also Rev. Rul. 69-70, 1969-1CB 182 (see attached). The IRS seeks to retroactively turn this into a crime because it feels the results worked to its disadvantage on collecting taxes.

The IRS' approach in this matter has been held by the Courts to be improper. See <u>U.S. v. Dahlstrom</u>, 713 F.3rd 14231 (1983) and <u>U.S. v. Pirro</u>, 96 F.Supp.2nd 279 (S.D.N.Y. 1999).

E. Assuming for the purposes of argument that the tax results could have been deemed false or that the government could have been defrauded, Defendants are still not guilty because the government failed to prove several material aspects of the case:

1. The government did not prove a conspiracy to defraud or aiding and abetting. The evidence showed Dorothy Henderson NEVER purported to give tax advice; disclaimed any intent to do so and routinely and consistently ALWAYS referred the parties to the trusts to independent tax professionals (lawyers and CPA's) for advice. Conspiracy is founded upon agreement to commit an illegal act or acts. The government's proof is completely lacking in any proof that Dorothy Henderson or George Henderson ever agreed with anyone to commit illegal acts. In fact, the tape recording made by the government investigator showed plainly that neither Dorothy Henderson nor George Henderson purported to give any tax advice at all; in fact, they declined to do so. Further, the government's three witnesses who had trusts all testified that they received NO tax advice from Dorothy Henderson or George Henderson. Defendants were exercising their First Amendment rights to discuss trusts and trust protection. That is not illegal. See <u>Dahlstrom</u> noted above.

2. In order to show that the government was defrauded, it must show two essential elements:

   a. That it was validly entitled to receive something; and

   b. That it received less than the actual amount due. The government failed to prove both elements of this. First of all, the trust

returns complied with all applicable regulations. In other words, the government had no right to request, under its own laws, case law and regulations, that the tax returns be filed by the individual rather than the trusts. Under IRS regulations, either the individual or the trust (but not both) is properly taxable for the income earned. The trusts had paid taxes. If, as the IRS claimed, the individual should have paid, the government was still defrauded only if the tax (not including penalty and interest which are not taxes due) due from the individual exceeded the tax already paid by the trust. The government failed to prove an essential element of the offense.

It was further seriously prejudicial error for the Court to fail to instruct the jury in the proper elements of what was fraud and to allow the government to proceed without regard as to the credit to be given for the taxes which had been paid.

3. The government failed to prove willfulness as defined by the Court's jury instructions. As the Court correctly instructed the jury, the Defendants were not guilty if they had a good faith belief that they were complying with the law.

It was serious prejudicial error not to instruct the jury as to the provisions of 18 USC § 4001 (a) and 26 USC §§ 641, 651 and 671, et seq. If the jury had known that the trusts strictly and meticulously complied with the law as written, no reasonable jury could have upheld the verdict if it had. Compliance with the law logically negates any willful intent to violate it. Further, the only evidence on this issue showed that the Defendants relied on the advice of attorneys and CPA's, all of who consistently expressed the opinion that what the trusts were doing was proper.

F. For all of these reasons, Defendants are entitled to have their convictions vacated. These facts establish that the Defendants were denied their constitutional rights to due process under the law.

1. Trial counsel provided ineffective assistance of counsel which deprived Defendants of their right to a fair trial by:

a.  Failing to cross-examine the government's witnesses to demonstrate Defendants had complied with the federal income tax laws;

b.  Failing to introduce all of Defendants proof that they relied on numerous authorities, including court decisions, in forming good faith beliefs that the trusts complied with federal income tax law. Therefore, Defendants did not willfully violate the tax statutes. This proof included:

   aa.) Participation by Defendants in a federal bankruptcy court proceeding where the IRS had tried to have a trust treated as the grantor's property. The Court ruled against the IRS based on the trust's compliance with all applicable law.

   bb.) U.S. v. Dahlstrom which Defendants had studied and, in fact, cited in their trust literature.

   cc.) The provisions of the tax code and tax rulings from the IRS.

   dd.) The opinion of numerous, totally independent tax professionals that the trusts were proper.

   This proof, if presented, would have demonstrated that Defendants, rather than trying to break the law, were carefully patterning the trust to fully comply with the tax provisions.

c.  Failing to request proper jury instructions and to object to improper jury instructions which effectively decided issues of fact adversely to the Defendants thereby depriving them of their right to have all material issues of fact decided by the jury.

d.  Failing to request a directed verdict of not guilty based on fact that there was no crime proven or assuming that there was, that the government had failed to prove the essential elements of conspiracy and/or loss, to show that the government was defrauded and willfulness.

    2. Appellate counsel provided ineffective assistance of counsel which effectively denied Defendants their rights to a direct appeal by failing to argue these issues of actual innocence. Defendants specifically requested and directed appellate counsel to raise this issue, and they refused to do so. Defendants attempted to raise this issue pro se, and the Commissioner of the Court of Appeals illegally refused them permission to file pro se and denied them access to the Court of Appeals on this issue.

    3. The Court erred in several material aspects which denied Defendants their rights to a fair and impartial jury trial. Specifically;

        a. The Court effectively presumed that the trusts were not valid for tax purposes and that returns were due from the individuals rather than the trusts;

        b. The Court applied a fatally defective and highly prejudicial measure of fraud loss both at the trial and at sentencing;

        c. The Court erroneously defined the elements necessary to prove Defendants guilty or failed to require certain necessary elements to be proved;

        d. The Court allowed irrelevant and prejudicial evidence to be introduced against Defendants which the jury could have concluded showed illegal activity.

II. Trial counsel provided constitutionally ineffective assistance of counsel in failing to move for a new jury panel when the jury was tainted through potential intimidation prior to trial and to ask for a mistrial when such intimidation continued during trial.

    A. When the jury panel was being questioned en banc prior to the trial, the judge stated that the case involved a potential violation of the income tax laws. One potential juror - in the presence of the other jurors - stated that he had been told that the federal income tax was unconstitutional. Without further comment or explanation, the Judge dismissed the juror.

After the dismissed juror walked out of the courtroom, the IRS agent seated at the prosecution table, called out loudly for someone to follow that juror and get his license plate number. He further stated 'we' need to audit him.

1. What was the reasonably foreseeable impact of that government conduct on the jury? They have now had it clearly demonstrated that if someone disagreed with the IRS, they could expect, at the very least, to be audited.

   The jury was being asked to impartially determine guilt or innocence in a tax case. To find the Defendants innocent would be to substantially disagree with the IRS. If only ONE juror, having witnessed that intended retaliatory action by the government, was intimidated so that he or she was less able to be impartial, Defendants were denied their Sixth Amendment rights to a fair trial.

2. During the course of the trial, Dorothy Henderson testified that three of her elderly clients had died, in her opinion, as a result of harassment by the IRS. The Assistant United States Attorney put his hand on the shoulder of the IRS representative at the prosecution table and said (loudly enough for the jury to hear), "Good job." If the jury had not been intimidated before, they surely were by now. When the government makes it clear that harassment leading to death is not merely acceptable but praised, what is the reasonably foreseeable impact on the jury? Certainly they could assume that they HAD BETTER avoid running afoul of the government by returning an innocent verdict.

   Defendants' counsel failed to protect them from these blatant intimidation tactics which could reasonably affect the jury's ability to render a fair and impartial verdict. Counsel failed to request a new jury panel after the first IRS comment and to request a mistrial after the Assistant United States Attorney's comment. Even if the Court had denied the motions, the Defendants' rights would have been preserved on the record. Counsel instead ignored the potential impact of the comments on the jury and, therefore, on the verdict. The Defendants were and are entitled to an untainted jury to determine guilt or innocence.

    Further, the intimidation was re-enforced by the Judge's instructions. He stated that it was not a defense to believe the income tax was unconstitutional. Defendants had raised no such defense. That issue came _only_ from the excused juror, and the instructions served to remind the jurors of him and the IRS' reaction to him.

 B. Counsel were also constitutionally ineffective in failing to object to the removal of the juror referenced in item A.

   It is settled law that Defendants are entitled to a representative panel of jurors. This includes, for example, jurors who have ethical objections to the death penalty in capital cases.

   Defendants were entitled to have the panel jurors with diverse views. The dismissed juror did not say he believed that the income tax was unconstitutional. He made a comment which the Judge could have answered. The Court SHOULD have asked the juror if he felt he could render a fair and impartial verdict and would be bound by the Judge's instructions on issues of law. The Court instead dismissed him apparently for cause.

   Defense counsel should have objected and forced the Court to properly question him. His failure to do so potentially deprived the Defendants of a jury pool which represented a variety of opinions.

III. In New Jersey v. Apprendi, the United States Supreme Court held that any fact which increased a Defendant's sentence beyond the statutory maximum must be proven and found by a jury. The statutory maximum in this case was five years for defrauding the government. Defendant Dorothy Henderson was sentenced to a total term of 135 months, and Defendant George Henderson was sentenced to a total term of 78 months. The only basis for the imposition of these terms, well in excess of the statutory maximum, was the issue of tax loss. This was NOT found by the jury. The Judge found it based on a preponderance to the evidence. When facts not found by the jury were used to increase the Defendant's sentence, this clearly violates

Defendants' Sixth Amendment rights and requires that their sentences in excess of 60 months be vacated as unconstitutionally imposed.

IV. Defendants' rights to a fair and impartial trial were violated by allowing the government to pay compensation to District Court Judges who preside over trials resulting in a guilty verdict against those charged with tax related crimes.

IRS procedures provide compensation to prosecutors and judges in the amount of up to $25,000.00 each for a tax case conviction. The Sixth Amendment of the United States Constitution provides that Defendants are entitled to a fair and impartial trial before an impartial judge and jury. It is further settled law that a judge is not ethically supposed to preside over a case in which he has a financial interest. It is well recognized that such an interest may, consciously or unconsciously, impact on the decision of the most scrupulous jurist.

Defendants' counsel failed to object to a judge with a financial interest presiding over the trial. In view of the consistent pattern of rulings in favor of the government in this matter and the jury instructions which were prejudicial to Defendants, it cannot be presumed that this error was harmless.

Defendants are entitled to a trial conducted before a judge who will not be paid compensation by the IRS in the event of a guilty verdict.

## CONCLUSION

The provisions of 26 USC § 671, which controls when a trust's income is taxable to the grantor, conclude with the following:

> No item of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 [26 USCS § 61] (relating to definition of gross income) or any other provision of this title, except as specified in this subpart [26 USCS §§ 671 et seq.].
> (Aug. 16, 1954, ch 736, 68A Stat. 226.)

CONGRESS has created a standard on this issue which is objective and exclusive. No one, including the IRS, is permitted to reallocate the tax liability to the grantor except pursuant to the provisions of the statute.

It is not the Defendants who are conspiring to circumvent the law; it is the Internal Revenue Service. It is the IRS' contention that despite the explicit provisions of 26 USC § 671, it may reallocate the tax burden to the grantor. It seeks to impose the subjective standard of its own judgment as to whether the trust deprives the government of income. It further seeks to <u>criminalize</u> conduct which was objectively legal when done because, in retrospect, it violates the IRS' self-created subjective standard.

No IRS authority to make law in direct contravention of Congressional provisions has been cited. Further, this type of retroactive criminalization is explicitly prohibited by the Constitution of the United States which specifically bars <u>ex post facto</u> laws.

If the IRS had a problem with these tax code provisions, its recourse was to Congress. Congress, in certain circumstances, has crafted provisions designed to prevent shifting income to lessen taxes; for example, the taxation of minor's income at their parent's rates. Congress certainly could have altered the law if it had chosen to do so. Until Congress acts, however, the Defendants were entitled to rely on compliance with the law as written to define what were legal and illegal actions.

The jury was never informed of the provisions of the tax code. Instead, the government introduced evidence of miscellaneous "inappropriate" acts; for example, the fact that the trusts deducted the maintenance expenses for the personal residences owned by the trust. The implication to the jury was that this was improper.

However, the tax code permits such a deduction to a trust as well as to a corporation and a partnership. The jury was not told that.

The danger of the IRS' position is clearly shown by an example involving the grantor's personal residences. While individuals cannot deduct maintenance costs for a residence, they are entitled to a one-time exclusion from capital gains taxation on the sale of a principal residence. A trust is not entitled to that exclusion.

Suppose in the tax years in question, a trust had sold the grantor's principal residence and instructed the grantor to report the income and apply the exclusion from tax on the gain. The IRS would, quite properly, have held that this was improper since the trust, not the grantor, owned the asset and under 26 USC § 671, the income was taxable to the trust (or its distributee under 26 § USC 651).

The IRS is specifically seeking to apply its own subjective opinion based not on the law but on its retroactive judgment of whether the actions in question lessened the taxes it collected. This clearly does not comply with the tax code or with the provision of 18 USC § 4001.

The Court instructed the jury that legal acts could be done for illegal purposes. In the abstract that is a true statement. (Driving a car is legal; driving a car to deliver illegal drugs is not.) He did not explain that there must be some illegal action involved; for example, the sale of drugs.

The jury was NOT told that if all of the individual acts were legal, the combination of them could not be retroactively declared illegal.

The danger of this approach is terrifying. In the indictment, one of the alleged improper acts, in furtherance of the conspiracy, was that Defendant Dorothy Henderson applied to the United States District Courts to enjoin IRS action. This is true. Defendant believed that the IRS was acting improperly and illegally. She sought court protection. The District Court AGREED with her and prohibited the IRS from proceeding. Yet, the IRS characterized this as an act of criminal conspiracy. If asking for court protection against government over-reaching can be deemed criminal, Americans no longer have civil liberties.

The only real potential issue of fact in this case was whether the trust or the grantor(s) controlled the assets and income. The Defendants were entitled to have the jury instructed on the applicable provisions of the tax code and pre-existing law (Dahlstrom and Pirro). The issue of control under the code would then be an issue of fact for the jury.

Instead, the Court usurped that issue. It essentially told the jury that the trusts were shams unless they had some "economic" effect other than to create tax losses. Trusts are not typically created for immediate economic reasons. For example, a trust created before marriage to protect assets in the event of a divorce is a precaution; just like insurance, if you need it, it can be very beneficial economically, but until you need it, it costs money. The Court's formulation ignored the code and essentially delegitimized the trusts in the eyes of the jury.

No crime has been proven in this case under the terms of the applicable statutes. Further, the jury was not instructed on the correct applicable law, and material issues were effectively removed from the jury as the finder of fact.

Defendants' sentences violate their Sixth Amendment rights under Apprendi, (as recently reaffirmed in Booker).

Defendants are entitled to have their sentences vacated and to be granted immediate release.

Respectfully submitted,

Dorothy R. Henderson

GEORGE HENDERSON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
RESPONDENT

v.

GEORGE HENDERSON JR.
DOROTHY R. HENDERSON

Case Number: #CR S-99-0294-GEB-CMK
CIV. S-03-1819-GEB-CMK-P

PROOF OF SERVICE

I, the undersigned, hereby certify that I am over the age of eighteen years and not a party to the above-entitled action.

On FEB 21, 2006, I served a copy of DEFENDANT'S RESPONSE TO MAGISTRATE'S FINDINGS AND RECOMMEDATIONS by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the United States Mail:

**(LIST ALL DEFENDANTS SERVED IN THIS ACTION)**

BENJIMAN WAGNER
UNITED STATES DISTRICT COURT

I declare under penalty of perjury that the foregoing is true and correct.

*[signature: George Henderson Jr.]*

Code Sec. 674

<<FULL TEXT>>

26 CFR 1.674(a)-1: Power to control beneficial enjoyment; scope of section 674.

An individual beneficiary who is a resident of the United States is not taxable on a distribution from a foreign trust considered to be owned by a nonresident alien grantor under subpart E of subchapter J of the Code.

REV. RUL. 69-70

Advice has been requested whether the income of a foreign trust, under the circumstances described below, is taxable to the beneficiary, an individual who is a resident of the United States.

X, a nonresident alien individual, created a foreign trust for the benefit of a resident of the United States. Under the terms of the trust instrument, X reserved absolute power to dispose of the beneficial enjoyment of both the income and the corpus of the trust. The trustees were nonresident aliens, and all of the trust property had a situs outside of the United States.

When income-producing property is placed in trust, the Federal income tax liability generally shifts from the grantor to the trust and beneficiaries in accordance with subparts A through D of part I, subchapter J, chapter 1, subtitle A of the Internal Revenue Code of 1954 (sections 641 through 669).

However, where the grantor retains dominion and control over the income and corpus of the trust, subpart E of subchapter J (sections 671 through 678), rather than subparts A through D of subchapter J, is applicable. Under section 671 of the Code, where the grantor is treated as the owner of any portion of a trust, there are included in computing the taxable income and credits of the grantor, those items of income, deductions, and credits against tax of the trust which are attributable to that portion of the trust to the extent that such items would be taken into account in computing taxable income or credits against the tax of an individual.

Since X, a nonresident alien grantor retained the absolute power to dispose of the beneficial enjoyment of both the income and the corpus of the trust, he is treated as the owner of the trust under section 674(a) of the Code. Accordingly, an individual beneficiary who is a resident of the United States is not taxable on that portion of the income distributed to him from the foreign trust which is considered to be owned by the nonresident alien grantor under subpart E of subchapter J of the Code.

It should be noted that United States source income of a foreign trust

- 1 -

Rev. Rul. 69-70, 1969-1 C.B. 182                    (c) 2001, Kleinrock Publishing

controlled by a nonresident alien grantor is taxed to the grantor. If the grantor is a resident of a non-treaty country, the provisions of section 871 of the Code apply concerning the tax. However, if the grantor is a resident of a treaty country, the provisions of the treaty may determine the tax.

<<END RULING>>

- 2 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

V.

DOROTHY R. HENDERSON
GEORGE HENDERSON JR.

Case Number: # CR S-99-0294-GEB-CMK
CIV S-03-1819-GEB-CMK-P

PROOF OF SERVICE

I. the undersigned. hereby certify that I am over the age of eighteen years and not a party to the above-entitled action.

On Feb 21st 2006, I served a copy of DEFENDANT'S RESPONSE TO MAGISTRATE'S FINDINGS AND RECOMMENDATIONS by placing said copy in a postage paid envelope addressed to the person hereinafter listed. by depositing said envelope in the United States Mail:

**(LIST ALL DEFENDANTS SERVED IN THIS ACTION)**

UNITED STATES DISTRICT COURT
BENJIMAN WAGNER
UNITED STATES ATTORNEY'S OFFICE

I declare under penalty of perjury that the foregoing is true and correct.

_____